UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARISELA LOZANO,<br><br>        Plaintiff,<br><br>   v.<br><br>COUNTY OF SANTA CLARA,<br><br>        Defendant. | Case No. 5:14-cv-02992-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 55 |

Plaintiff Marisela Lozano ("Plaintiff") brings this action against the County of Santa Clara ("Defendant" or "County") alleging: (1) Disability Discrimination; (2) Retaliation; (3) Failure to Accommodate; (4) Harassment; and (5) Failure to Engage in the Interactive Process in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.,* and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* See Compl., Dkt. No. 1. Federal subject matter jurisdiction arises pursuant to 28 U.S.C. § 1331.

Presently before the court is Defendant's Motion for Summary Judgment or Summary Adjudication pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 55. Defendant contends there is no genuine dispute of material fact with respect to each of Plaintiff's five causes of action and that the County is entitled to judgment as a matter of law. Plaintiff opposes Defendant's Motion as to the First, Third, and Fifth causes of action. Pl. Opp. to Mot. for Summary Judgment ("Opp.") at 1-2, Dkt. Nos. 72, 76-9 (sealed). However, Plaintiff does not oppose, and agreed to withdraw, her Second and Fourth causes of action for retaliation and harassment, respectively. Id.

Having carefully reviewed the parties' papers and considered the arguments of counsel

United States District Court
Northern District of California

United States District Court
Northern District of California

presented at the hearing on this matter, and for the reasons explained herein, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I.     BACKGROUND

This case arises from Plaintiff Marisela Lozano's claims that the County discriminated against her and failed to accommodate her mental disability by refusing to transfer her to a vacant position away from Senter Road, the location where she worked between 2007 and 2013.  Plaintiff alleges that she has at least two diagnosed mental disabilities that entitle her to accommodation under the ADA, and that the disabilities are related to, or exacerbated by, the Senter Road location. Plaintiff contends that her disabilities wholly prevent her from performing the essential functions of her job at Senter Road, but would not prevent her from performing such functions at a location other than Senter Road.  Supported by the recommendations of her doctors, Plaintiff made at least three requests for accommodation asking to be transferred to a position away from Senter Road, all of which were ultimately denied by the County.  Plaintiff then filed the instant lawsuit.

The following basic facts are taken from record and are either undisputed or not reasonably disputed to the extent relied on by the court.

### A.     Plaintiff's Employment History

Plaintiff began working as an employee of the County of Santa Clara on April 2, 2001, and has been with the County's Social Services Agency ("SSA") since 2004.  Decl. of Melissa Kiniyalocts ("MK Decl."), Exh. A ("Lozano Depo.") 78:15-17, Dkt. No. 66-1; Compl. ¶ 16.  In October 2007, Plaintiff began training as Eligibility Worker ("EW") for the Department of Employment and Benefits Services ("DEBS"), a department of the SSA.[1]  Lozano Depo. at 104:21-105:11; 196:1-197:2.  When an employee is training to be an EW, they are considered an

---

[1] EWs are tasked with determining eligibility for a variety of public assistance programs, requiring them to verify aspects of applicants' personal and financial information.  Declaration of Katrina William ("Williams Decl.") ¶¶ 8-9, Dkt. No. 60.  EWs therefore receive an initial, six-month training on a variety of systems and programs designed to assist the EWs and provide applicants the appropriate assistance.  Id. ¶¶ 14-21.  EWs then also receive ongoing training "to ensure that they are familiar with developments in federal, state, and local requirements for public assistance programs for which they make eligibility determinations."  Mot. at 2; id.

Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   "EW I," and will become an "EW II" upon successful completion of the training program.  Id. at

2   104:21-105:11; 196:1-197:2.  During this training, Plaintiff worked at the Medical Service Center

3   located at 1877 Senter Road.  Id. at 103:1-5; 196:24-198:9.

4           In December 2007, while she was training at 1877 Senter Road, Plaintiff alleges that her

5   previous supervisor made an inappropriate and harassing comment toward her, causing her

6   emotional distress.  See Compl. ¶ 17; Lozano Decl. at 102:21-103:5.  This incident was the basis

7   of a prior lawsuit Plaintiff brought against the County in 2009, alleging gender discrimination,

8   failure to prevent discrimination, and retaliation.[2]  See Compl. ¶ 17; Def. RJN, Exh. B, Dkt. No.

9   56-1.

10          In March 2008, following the initial six-month training program, Plaintiff was terminated

11  as an EW I and returned to her previous position as a Client Services Technician ("CST") until

12  October 2008 when she went on leave.  Lozano Depo. at 198:10-199:2.  Plaintiff was on leave

13  from October 2008 to April 2009.  Id. at 199:9-13.  While Plaintiff was on leave, she appealed her

14  termination as an EW to the County's Personnel Board, which found in her favor and reinstated

15  her in EW training in April 2009.  Id. at 199:14-200:3.  Plaintiff completed the training

16  successfully and became an EW II in October 2009.  Id. at 200:24:-201:2.

17          As an EW II, Plaintiff worked at the office building located at 1870 Senter Road, which

18  was across the street from her previous office at 1877 Senter Road.  Id. at 114:8-16.  Plaintiff

19  worked at this location in her capacity as an EW II from October 2009 through June 2011, when

20  she again went on leave.  Id. at 114: 15-24.  Plaintiff was on leave from June 2011 through June

21  2012, and returned to work at 1870 Senter Road on June 11, 2012.  Lozano Depo. at 114:8-24.

22  Plaintiff continued working there until January 18, 2013, at which point she again went on medical

23  leave.  Id. at 108:3-6; 114:20-24; 201:23-25.  Plaintiff has remained on leave from her position as

24  an EW II since January 2013.  Id.

25  _____

26  [2] Defendant's Request for Judicial Notice (Dkt. No. 56) is hereby GRANTED to the extent
    referenced in this Order.   In April 2012, the jury found that the County was not liable.  Def. RJN,
27  Exh. C, Dkt. No 56-2.

                                                     3

United States District Court
Northern District of California

B.    **Plaintiff's Requests for Accommodation**

i.    **First Request for Accommodation - May 31, 2012**

On May 31, 2012, while still on her second medical leave, Plaintiff submitted her first request for accommodation, wherein she asked to be transferred to a position away from Senter Road permanently.  Lozano Decl. ¶ 4; Exhs. 2-3, Dkt. No. 76-7 (sealed); Lozano Depo. at 267:4-270:3; 320:8-24 and Exhs. 3 and 9.  In support of her request, Plaintiff provided a medical note from her treating healthcare providers, explaining that the request was based on the ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████.

Upon Plaintiff's return to work on June 11, 2012, Plaintiff's new supervisor Ms. Bailey-Murray held an "interactive process meeting" regarding Plaintiff's request for accommodation, and indicated that she would further discuss it with her supervisor.  MK Decl, Ex. D "(Bailey-Murray Depo.")" at 288:22-290:7; Lozano Decl. ¶8.  The following day, Ms. Bailey-Murray had a second meeting with Plaintiff wherein she granted Plaintiff's request to work part-time for the first two weeks but denied her request for a transfer, "inform[ing] her that office relocation is not a work restriction."  Bailey-Murray Depo. at 293:9-294:2.; Lozano Decl. ¶ 8.

Plaintiff appealed the denial of her accommodation request on November 26, 2012.  Lozano Decl. ¶ 12.  On December 21, 2012, Mark Cursi, the County's "Coordinator of Programs for the Disabled" denied Plaintiff's appeal.  Id.; Exh. 12.  Pursuant to Plaintiff's request, EOD Manager Karen Ulrich then reviewed the appeal.  On February 7, 2013, Ms. Ulrich denied the appeal on the grounds that the medical notes provided in connection with the request "failed to demonstrate that Ms. Lozano had a disability and needed accommodation in order to perform the essential functions of her position."  Id. ¶¶13 and Exhs. 6-7.

Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

### ii.     Second Request for Accommodation – April 16, 2013

On April 16, 2013, Plaintiff submitted a second request for a permanent transfer away from Senter Road.  Included in Plaintiff's request was a medical note from her psychologist Dr. Susan Duenke, stating that Plaintiff's condition had improved and she would be able to return from her medical leave of absence, but that it "would be imperative that she be moved to an alternate location to avoid a relapse."  Id. ¶ 15 and Exh. 8; Lozano Depo. at 2270:22- 278:3; 323:6-325:3, Exhs. 4,10.  Dr. Duenke concluded her note by stating: "The accommodation being requested is that [Plaintiff] be given a position in another location."  Id. at Exh. 8.  In response, Ms. Bailey- Murray informed Plaintiff on May 1, 2013 that the medical note was insufficient because it failed to state a "work restriction."  Lozano Decl. at ¶ 15 and Exh. 9.  Plaintiff then submitted a clarification from Dr. Duenke, but Ms. Bailey- Murray again informed Plaintiff that the revised note did not identify a work restriction, and therefore the County was unable to grant her request.  Id. at Exh. 10.

Plaintiff then met and exchanged a series of communications with Patricia Carter from the EOD in an effort to further address her accommodation request.  Plaintiff authorized Ms. Carter to contact Dr. Duenke directly, which she did.  Id. ¶ 20.  Dr. Duenke provided a written response to Ms. Carter, explaining that Plaintiff was able to perform all of the enumerated tasks when she is not at Senter Road, but because "there has been significant trauma associated with the location," she is unable to perform any and all of the tasks" when she is at that location.  Depo. of Dr. Susan Duenke ("Duenke Depo.") at Exh. 12., Dkt. No. 76-5 (sealed).  The County did not grant Plaintiff's request.

### iii.     Third Request for Accommodation – April 29, 2014

On April 29, 2014, Ms. Lozano submitted third request for accommodation, again requesting reassignment to a location other than Senter Road.  Id. ¶ 25, Exh. 17.  In support of this request, Plaintiff also submitted a letter from Dr. Roger Karlsson, who had become her treating psychotherapist.  See Decl. of Dr. Roger Karlsson ("Karlsson Decl.") ¶ 2, Dkt. No. 76-3 (sealed).

Dr. Karlsson's letter requested that Plaintiff be transferred away from Senter Road and that she be given a new supervisor.   Lozano Decl. at Exh. 17.  It explained that the request was based on Plaintiff's medical condition, the symptoms of which could worsen if she was exposed to "cognitive triggers," and stating that it is "imperative that [she] is not returning to the same worksite."  Id.

### C.     The County Offers Plaintiff a Position in Mountain View

On September 22, 2014, the County offered Plaintiff an EW II position in the DEBS' Mountain View office, which she initially accepted.  Decl. of Nancy Clark ("Clark Decl. ") ¶¶ 5-6, Dkt. No. 61.  However, after Plaintiff accepted the position, the Human Resources ("HR") Department informed her that, because of how long she had been on leave, she would be required to undergo additional training.  Id.; Lozano Decl. ¶ 38.  HR indicated that the training would occur at the County of Santa Clara Department of Employment and Benefit Services training center, which is located on Senter Road.  Clark Decl. ¶¶5-6; Lozano Decl. ¶ 38.  Plaintiff stated that she could not go to Senter Road due to her condition.  Lozano Decl. ¶ 38.  HR indicated it would look into the situation, but no further action appears to have been taken and Plaintiff was not transferred to Mountain View.  Id.

### D.     Plaintiff's Medical History & Mental Illness Diagnoses

Plaintiff's current psychotherapist, Dr. Roger Karlsson, diagnosed Plaintiff ███ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████. Karlsson Decl. ¶ 7. Previously, Plaintiff's former psychologist Dr. Susan Duenke diagnosed Plaintiff ████████████████████████████████████████████.

Plaintiff and her doctors contend that her mental disabilities impose the following limitations on her life:

6

United States District Court
Northern District of California



The cause of Plaintiff's mental illnesses is not identified here or diagnosed.  See Karlsson

Decl. ¶ 9.  However, Dr. Karlsson opines that whatever the source of Plaintiff's ████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████.

## II.    LEGAL STANDARD

A motion for summary judgment or partial summary judgment should be granted if "there

is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of

Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

1  law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

2          The moving party bears the initial burden of informing the court of the basis for the motion

3  and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions,

4  or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v.

5  Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof at

6  trial on an issue, the moving party need only point out "that there is an absence of evidence to

7  support the nonmoving party's case;" it does not need to disprove its opponent's claim. Id. at 325.

8          If the moving party meets this initial burden, the burden then shifts to the nonmoving party

9  to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for

10 trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. A "genuine issue" for trial exists if the

11 non-moving party presents evidence from which a reasonable jury, viewing the evidence in the

12 light most favorable to that party, could resolve the material issue in his or her favor. Anderson v.

13 Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

14         The court must draw all reasonable inferences in favor of the party against whom summary

15 judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

16 However, the mere suggestion that facts are in controversy, as well as conclusory or speculative

17 testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Id.

18 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than

19 simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co.

20 v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come

21 forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c). "If the nonmoving

22 party fails to produce enough evidence to create a genuine issue of material fact, the moving party

23 wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210

24 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create

25 a genuine issue of material fact, the nonmoving party defeats the motion." Id.

26

27

28
Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

United States District Court
Northern District of California

1

## III.   DISCUSSION

2        Plaintiff initially asserted five claims against the County.  However, as a preliminary

3   matter, Plaintiff does not oppose Defendant's Motion as to the Second and Fourth causes of action

4   for retaliation and harassment, agreeing to "withdraw" those claims in order to "avoid unnecessary

5   issue/claim preclusion problems created by re-litigating prior disputes between the parties."[3]

6   Mot. at 1-2.  In light of Plaintiff's position, as well as the court's review of the matter, Defendant's

7   Motion for Summary Judgment is GRANTED as to Plaintiff's claims for retaliation and

8   harassment.  As explained below, because the court finds that factual disputes exist as to the

9   remaining three causes of action, Defendant's Motion is DENIED with respect to Plaintiff's

10  claims for disability discrimination, failure to accommodate, and failure to engage in the

11  interactive process.

12       **A.   Disability Discrimination in Violation of the ADA[4]**

13       The ADA prohibits any covered employer from discriminating "against a qualified

14  individual on the basis of disability."  42 U.S. Code § 12112(a).  In order to establish a prima facie

15  case for disability discrimination under the ADA, a plaintiff must demonstrate: (1) she has a

16  disability within the meaning of the ADA; (2) she is an otherwise "qualified individual" able to

17  perform the essential functions of the job with reasonable accommodation; and (3) she was

18  discriminated against "on the basis of" the disability.  Bates v. United Parcel Serv., Inc., 511 F.3d

19  974, 988 (9th Cir. 2007); Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999;

20

21  [3] Since the hearing on Defendant's Motion for Summary Judgment, Plaintiff has filed a Motion for
    Leave to Amend the Complaint.  Dkt. No. 94.  Plaintiff primarily seeks to (1) clarify allegations

22  regarding her medical diagnoses, which were absent or unclear in the original Complaint; and (2)
    remove the Second and Fourth causes of action.  Id.  However, Defendant requests that the court

23  grant summary judgment on these claims, rather than allow Plaintiff with withdraw them by
    amending the Complaint, in order to preclude Plaintiff from reasserting the claims at a later date.

24  Def. Opp. to Pl. Mot. for Leave to Amend, Dkt. No. 97 at 2.

25  [4] Plaintiff's First Cause of Action alleges disability discrimination under both the ADA and Title
    VII.  See Compl. at 15-17, ¶ 70.  However, Title VII prohibits discrimination on the basis of "race,

26  color, religion, sex, or national origin;" Title VII does not apply to discrimination on the basis of
    disability.  42 U.S.C. § 2000e-2.  Accordingly, the court will address Plaintiff's claim exclusively

27  under the ADA.

9

28  Case No.: 5:14-cv-02992-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
    SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1133 (9th Cir. 2001). As defined by the ADA, to discriminate on the" basis of disability" includes, *inter alia*,

> (A) "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business;" or

> (B) "denying employment opportunities to a[n]…employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee."

42 U.S.C. §§ 12112(b)(5)(A)-(B).

In the Ninth Circuit, claims for disability discrimination under the ADA are typically subject to the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Curley v. City of N. Las Vegas, 772 F.3d 629, 632 (9th Cir. 2014) (applying McDonnell Douglas to a disability discrimination claim brought under the ADA); Alejandro v. ST Micro Elecs., Inc, 178 F. Supp. 3d 850, 859 (N.D. Cal. 2016) (same). Under this framework, "an employee challenging an adverse employment action has the initial burden of establishing a prima facie case of discrimination." Curley, 772 F.3d at 632. If the plaintiff does so, the burden then shifts to the employer to provide a legitimate reason for the challenged action. Id. If the employer makes such a showing, the burden again shifts back to the employee to prove that the employer's explanation was pretext for discrimination. See Curley, 772 F.3d at 632; Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001). However, where, as here, the disability discrimination claim arises under a failure to accommodate theory, once a plaintiff has established a prima facie case, the burden shifts to the defendant to show that making a reasonable accommodation would cause it undue hardship. See 42 U.S.C. § 12112(b)(5)(A); see also Anderson v. Nat'l Grid, PLC, 93 F. Supp. 3d 120, 131 (E.D.N.Y. 2015).

### i. Prima Facie Case of Discrimination

Defendant challenges Plaintiff's prima facie case on the grounds that she does not have

10

Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   disability within the meaning of the ADA.[5]  Mot. at 11.

2           An individual is considered disabled for the purposes of the ADA if he or she: (1) has "a

3   physical or mental impairment that substantially limits one or more major life activities;" (2) has a

4   "record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. §

5   12102(1); EEOC Regulations to Implement the Equal Employment Provisions of the Americans

6   With Disabilities Act "EEOC Regulations"), codified at 29 C.F.R. § 1630.2(g), as-amended, 76

7   Fed. Reg. 16977 (Mar. 25, 2011).[6]  The term "mental impairment" is generally construed broadly

8   to encompass "any mental or psychological disorder," including "emotional or mental illness."  §

9   1630.2(h)); see also EEOC ENFORCEMENT GUIDANCE ON THE AMERICANS WITH DISABILITIES ACT

10  AND PSYCHIATRIC DISABILITIES, 1997 WL 34622315, at *2, § 1 ("Examples of 'emotional or

11  mental illnesses' include major depression, bipolar disorder, anxiety disorders (which include

12  panic disorder, obsessive compulsive disorder, and post-traumatic stress disorder), schizophrenia,

13  and personality disorders.").  Whether a mental impairment "substantially limits" a major life

14  activity must be assessed "in favor of expansive coverage," and construed broadly "to the

15  maximum extent permitted by the terms of the ADA."  29 C.F.R. § 1630.2(j)(1)(i).  Congress

16  reiterated the intended expansiveness of ADA's applicability in 2008 when it adopted the ADA

17  Amendments Act ("ADAAA"), which emphasized that the ADA was intended to "provide a clear

18  and comprehensive national mandate for the elimination of discrimination against individuals with

19  disabilities," and sought to reinstate the "broad scope of protection" Congress intended be

20  available under the Act.  Pub. L. No. 110–325, §§ 2(a)(1), (b)(1), 122 Stat. 3553 (abrogating the

21  narrower standards previously set forth by the Supreme Court in Sutton v. United Air Lines, 527

22  U.S. 471, (1999), and Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184,

23  ──────────────────

24  [5] Defendant does not contest that Plaintiff satisfies the other two elements of the prima facie case.

25  [6] Both Plaintiff and Defendant focus the majority of their discussion on the first of these three
    definitions, though Plaintiff contends that she satisfies all three definitions.  See Opp. at 17-18.

26  Because the court finds that there is sufficient evidence upon which a jury could conclude that
    Plaintiff is disabled under the first definition, it is unnecessary to address the other two definitions

27  at this time.

28  Case No.: 5:14-cv-02992-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
    SUMMARY JUDGMENT

United States District Court
Northern District of California

1   (2002)).

2       Here, Defendant seeks summary judgment on the grounds that Plaintiff is not disabled as a

3   matter of law because her disability only arises in connection with a single workplace.  Mot. at 11.

4   Defendant argues that "the inability to work for a particular supervisor or in a particular location

5   does not constitute a disability as a matter of law."  Id. This argument is not without merit.  A

6   number of instructive cases suggest that if a condition only becomes disabling in response to

7   particular circumstances, that is not a disability under the ADA.  See Weiler v. Household Fin.

8   Corp., 101 F.3d 519, 526–27 (7th Cir. 1996) (holding that the ADA's reasonable accommodation

9   requirement does not require an employer to transfer a disabled employee to a different supervisor

10  because the supervisor causes the employee to suffer from stress-related disorders); Haynes v.

11  Williams, 392 F.3d 478, 483 (D.C. Cir. 2004) (explaining that "[i]f the impact of an impairment

12  can be eliminated by changing the address at which an individual works, that impairment is

13  neither permanent nor long term," and concluding that the plaintiff's condition did not

14  substantially limit a major life activity if it "could have avoided…by working at a different

15  location."); Prichard v. Dominguez, 2006 WL 1836017, at *13-14 (N.D. Fla. 2006)  (agreeing that

16  where the plaintiff has not shown that she is unable to perform a broad class of jobs – but rather is

17  only limited with respect to a particular job or supervisor – the plaintiff "is not limited in the major

18  life activity of working;" and further finding that requested accommodation of a transfer was

19  "unreasonable as matter of law," despite statements from her doctor that she "'could again become

20  *fully functional* at her level of professional standing' if only she were allowed to work in a

21  different setting."); Stanfill v. Johnson, 203 F. App'x 72, 73 (9th Cir. 2006) (affirming dismissal

22  of discrimination claim brought under the Rehabilitation Act on the grounds that the plaintiff's

23  "claimed inability to work for particular supervisors due to stress caused him by those supervisors

24  is not…a disability within the meaning of [the Act].").

25       While Defendant's argument and the cases cited in support thereof are compelling, in light

26  of Plaintiff's multiple mental illness diagnoses and the ADAAA's instruction that the definition of

28  Case No.: 5:14-cv-02992-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
    SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

disability should be read expansively "to the maximum extent permitted," the court finds that

summary judgment is inappropriate here. See 29 C.F.R. § 1630.2(j)(1)(i). Notably, all of the

above reference cases predate the enactment of the ADAAA, which mandated a significant

broadening in courts' interpretation of what constitutes a disability under the ADA. See Pub. L.

No. 110–325, §§ 2(a)(1), (b)(1), 122 Stat. 3553; 29 C.F.R. § 1630.2(j)(1)(iv) ("[T]he term

'substantially limits' shall be interpreted and applied to require a degree of functional limitation

that is lower than the standard for 'substantially limits' applied prior to the ADAAA"); see also

Feldman v. Law Enf't Assocs. Corp., 779 F. Supp. 2d 472, 483 (E.D.N.C. 2011) ("pre-ADAAA

case law…carr[ies] little, if any, precedential weight with respect to the issue of whether the

plaintiffs in this case were disabled under the ADAAA.").

     Moreover, Plaintiff has offered evidence from her doctors – including deposition

testimony, declarations, and medical reports – as to the legitimacy, severity, extent, and impact of

her alleged mental disabilities. See Dkt. Nos. 76(1)-(11). The record indicates that Plaintiff's

current treating psychotherapist Dr. Karlsson diagnosed Plaintiff with



     As a result of these conditions, Plaintiff contends that she is unable to perform any of the

----

7 It merits noting that Plaintiff's position that the aforementioned diagnoses constitute her alleged disabilities is unclear or lacking in the initial Complaint. Plaintiff's pleadings did not allege that she received medical diagnoses or identify the specific mental condition that she now claims constitutes a disability. Rather, the Complaint refers to her conditions only in generalized terms. However, Plaintiff's opposition papers clarify her position and provide supporting declarations and deposition testimony as to her specific diagnoses. Additionally, Plaintiff has filed a Motion for Leave to Amend the Complaint (Dkt. Nos. 94, 95, 96) in order to include these more specific allegations, which the court GRANTS to the extent specified in this Order.

Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

United States District Court
Northern District of California

essential functions of her job on Senter Road, but would be able to perform all such functions at another location.  Opp. at 20; <u>see</u> Karlsson Decl. at Exh. 1; Duenke Depo. at Exh. 12; Lozano Decl. ¶¶ 5, 35.  Plaintiff also claims that while her anxiety may be triggered by a particular location, her ███████████████████████████████████████████ are unrelated to work and will persist regardless of whether or not she is transferred.  <u>Id.</u> at 16.  Thus, Plaintiff's position appears to be that working at the Senter Road location exacerbates her underlying mental conditions to the point that they become debilitating, but working at an alternative location would not so exacerbate these conditions.

While the court understands - and even shares - Defendant's concern that recognizing such circumstance-specific conditions as disabilities under the ADA opens the door to accommodation claims beyond the scope of the Act's intended protections, based on the record in this case the court cannot conclude as a matter of law that Plaintiff is not disabled.  The language of the ADAAA casts a wide net, including provisions that strongly suggest Congress's intent to include intermittent or latent conditions in its definition of disability.  <u>See</u>, <u>e.g.</u>, § 12102(4)(D) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.").  Plaintiff has presented evidence of medical diagnoses for mental disorders recognized as disabilities under the ADA, as well as medical explanations of how such disorders impact her life.   Based on the foregoing, the court finds that there is a triable issue as to whether Plaintiff is disabled and that Plaintiff has adequately set forth a prima facie case of disability discrimination.

### ii.    No "Undue Burden" on the County

In its Motion for Summary Judgment, the County initially argued that it had at least two legitimate reasons for not granting Plaintiff's request for a transfer.  First, it asserted that in September 2013 there were "no vacant EW positions in a location other than Senter Road.  Mot. at 15; MK Decl., Exh. E (Carter Depo.) at 154:23-155:8.   And second, in September 2014 when there was a vacant EW position in a location other than Senter Road, the County argued that it was

14

Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

unable to place Plaintiff in the position despite having offered it to her because she refused to undergo the necessary training for the position, which only took place at Senter Road.  Mot. at 16; see Williams Decl. ¶¶ 14-28.

However, since the County filed this Motion, the Parties entered into a stipulation as to certain discovery issues in this case.  See Discovery Stip., Dkt. No. 71.  Pursuant to that Stipulation and Order, Defendant admits:

1.      That "throughout the time period covered by this dispute, at least one vacant employment position existed that Plaintiff Marisela Lozano was qualified for and that would not have required her to work or train on Senter Road, assuming Plaintiff proves that she was a qualified individual with a disability under the Americans with Disabilities Act."  Id. at 2 ¶ 1.

2.      That "it would not have imposed an undue hardship to transfer Plaintiff into an available Office Specialist III position that was filled on or after May 31, 2012 and which would not have required Plaintiff to work or train on Senter Road."  Id. at 3 ¶ 11; 6 ¶ 8.

If an employee is disabled within the meaning of the ADA, the failure to provide reasonable accommodation to that employee is considered discrimination on the basis of disability, unless doing so would impose an undue burden or hardship.  See 42 U.S.C. § 12112(b)(5)(A).  The County now stipulates that granting Plaintiff's request for accommodation would not impose any such hardship.  Accordingly, having determined that there is a triable issue as to whether Plaintiff is disabled, no further analysis is required and Defendant's Motion for Summary Judgment is DENIED as to Plaintiff's First Cause of Action.

### B.      Failure to Accommodate and Failure to Engage in the Interactive Process in Violation of the ADA

As set forth in the previous section, the ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."  42 U.S.C. § 12112(b)(5)(A).  Accordingly, a plaintiff makes a prima facie case for failure to accommodate by showing: (1) she is has a

15

1    disability as defined by the ADA; (2) her employer had notice of her disability; (3) she could

2    perform the essential functions of the position at issue with reasonable accommodation; and (4)

3    the employer has refused to make such accommodations.  See Samper v. Providence St. Vincent

4    Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing Allen v. Pac. Bell, 348 F.3d 1113, 1114

5    (9th Cir. 2003)); Ludovico v. Kaiser Permanente, 57 F. Supp. 3d 1176, 1199 (N.D. Cal. 2014); §

6    12112(b).

7          Once an employer becomes aware of the need for accommodation, that employer has a

8    mandatory obligation under the ADA to engage in an interactive process with the employee to

9    identify and implement appropriate reasonable accommodations."  Humphrey v. Mem'l Hosps.

10   Ass'n, 239 F.3d 1128, 1138 (9th Cir.2001); accord UPS Supply Chain, 620 F.3d at 1110-11;

11   Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002).   An employer is not

12   necessarily obligated to provide the employee with the specific accommodation she requests or

13   prefers; the employer "need only provide some reasonable accommodation."   UPS Supply Chain;

14   620 F.3d 1103, 1110-11.  Employers that "fail to engage in the interactive process in good faith

15   face liability for the remedies imposed by the statute if a reasonable accommodation would have

16   been possible."  Timmons v. United Parcel Serv., Inc., 310 F. App'x 973, 974 (9th Cir. 2009).

17   "Where there is a genuine dispute of material fact as to whether the employer properly engaged in

18   the interactive process, summary judgment will seldom be appropriate because it is extremely

19   difficult to prove that no reasonable accommodation would have been available."  Id.

20         Pursuant to the court's analysis of Plaintiff's first claim, discussed above, the court has

21   already determined that there is at least a triable question as to whether Plaintiff is qualified

22   individual with a disability, and the County has stipulated that providing Plaintiff with her

23   requested accommodation would not impose an undue hardship.  See Discovery Stip. ¶¶ 1, 9, 11.

24   To the extent the County now raises an argument in its Reply brief that it lacked knowledge or

25   notice of Plaintiff's disability, the court finds this argument unpersuasive, contrary to the evidence

26   submitted by Plaintiff and her doctors, and, at a minimum, a disputed factual question.  See Reply

27

28
16

United States District Court
Northern District of California

1    at 7-8; Karlsson Decl., Exh. 1, §§ 2-4; Duenke Depo. at 30:2-9; 70:2-74:22; 81:2-14; 111:19-21

2    and Exh 12.[8]  It is also undisputed that Plaintiff was never actually transferred pursuant to her

3    accommodation request.  Accordingly, assuming for the purposes of this motion that Plaintiff is

4    disabled, the County cannot prevail on summary judgment "unless it establishes through

5    undisputed facts that ... reasonable accommodation was offered and refused" or that it "did

6    everything in its power to find a reasonable accommodation, but the informal, interactive process

7    broke down because [Plaintiff] failed to engage in discussions in good faith."  Perez v. Proctor &

8    Gamble Mfg. Co., 161 F. Supp. 2d 1110, 1122, 1124 (E.D. Cal. 2001 (quoting Jensen v. Wells

9    Fargo Bank, 85 Cal. App. 4th 245, 255 (2000)); accord Roberts v. Kaiser Found. Hosp., 2015 WL

10   545999, at *7 (E.D. Cal. 2015).

11         Thus, the only two issues remaining before the court are whether Plaintiff's request for a

12   transfer was unreasonable as a matter of law, and if not, whether the County engaged in the

13   interactive process and made an effort to provide Plaintiff reasonable accommodation in a manner

14   sufficient to satisfy its obligations under the statue.

15                    **i.    The Reasonableness of Plaintiff's Requested Accommodation**

16         The determination of whether a particular accommodation is reasonable is "ordinarily a

17   question of fact" that is best left to the jury.  U.S. E.E.O.C. v. UPS Supply Chain Sols., 620 F.3d

18   1103, 1110 (9th Cir. 2010); accord Lujan v. Pac. Mar. Ass'n, 165 F.3d 738, 743 (9th Cir.1999);

19   Diaz, 373 F. Supp. 2d at 1061-62.  A "reasonable accommodation" may include changes such as

20   "job restructuring, part-time or modified work schedules, reassignment to a vacant position . . .

21   appropriate adjustment or modifications of examinations, training materials . . . and other similar

22   accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B); 29 C.F.R. §

23

24   [8] Defendant's argument that "Lozano never informed the County that she needed an adjustment or
     change at work for a reason related to her mental impairments" is directly refuted by the reports
25   from her doctors directly stating the need for such changes.  See id.  Plaintiff's purported failure to
     "state a work restriction" in connection with her accommodation requests also does not negate the
26   County's notice, even if true, and is disputed.  See Reply at 7.  Finally, Defendant's suggestion
     that Plaintiff's "need for an accommodation was not obvious," is irrelevant in light of the evidence
27   that her doctors informed Defendant of this need.

                                                        17
28   Case No.: 5:14-cv-02992-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
     SUMMARY JUDGMENT

1630.2(o)(ii).  For the purposes of defeating summary judgment, a plaintiff "need only show that an accommodation seems reasonable on its face, *i.e.,* ordinarily or in the run of cases." U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401–02 (2002) (citing Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001) (finding that the plaintiff satisfied burden on reasonableness by showing that, "at least on the face of things," the accommodation was feasible for the employer), and Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138-39 (2d Cir. 1995) (holding that a plaintiff may meet her "burden of production" by identifying "the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.")).

The County moved for summary judgment on the grounds that Plaintiff's request for a transfer was not reasonable as a matter of law.  Mot. at 18.  In support of this argument, Defendant again relied on cases where courts have found an employee's request for transfer based on circumstance-specific issues - such as an alleged inability to work for a particular supervisor - unreasonable. [9]  However, the County does not reiterate this argument in its Reply brief, focusing instead on showing the efforts it *did* take to accommodate Plaintiff.  See Reply at 8.  In any event, based on the record in this case the court finds no basis to conclude that Plaintiff's request was per se unreasonable.  To the contrary, assuming that Plaintiff qualifies as disabled, a reassignment to a vacant position or a modification to a required training course are expressly identified in the statutory definition of what may constitute reasonable accommodations.  See 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(ii).

This does not necessarily mean that the County was under an obligation to grant the requested transfer, but it does mean that it was under an obligation to do more than reject it out of

---

[9] See, e.g., Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 581 (3d Cir.1998) (concluding that an employee's proposed accommodation, transfer away from co-workers that caused stress issues, was unreasonable as matter of law); Prichard, 2006 WL 1836017, at *13-14 (finding requested transfer to a different supervisor unreasonable as matter of law); Roberts v. Kaiser Found. Hosp., 2015 WL 545999, at **23-24 (E.D. Cal. 2015) (holding that the plaintiff's request to be relocated to an alternate worksite was "functionally identical to a request that plaintiff be given a new supervisor, which is per se unreasonable.")

Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

United States District Court
Northern District of California

hand.  See UPS Supply Chain; 620 F.3d 1103, 1110-11; Hanson v. Lucky Stores, 74 Cal. App. 4th

215, 228 (1999) (explaining that an employer's obligation to provide reasonable accommodations

to disabled employees does not require that it provide "the best accommodation or the

accommodation the employee seeks").  Thus, the court turns to whether the County undertook

sufficient steps to reasonably accommodate Plaintiff's alleged disability.

### ii.    The County's Efforts to Engage in the Interactive Process and Provide Reasonable Accommodation

When an employee requests an accommodation for a disability, the employer's mandatory

obligation to engage in the interactive process is triggered.  Humphrey, 239 F.3d at 1138; UPS

Supply Chain, 620 F.3d at 1110-11; Zivkovic, 302 F.3d at 1089.  This process "requires: (1) direct

communication between the employer and employee to explore in good faith the possible

accommodations; (2) consideration of the employee's request; and (3) offering an accommodation

that is reasonable and effective."  UPS Supply Chain, 620 F.3d at 1110-11; Zivkovic, 302 F.3d at

1089; see also Ludovico, 57 F. Supp. 3d at 1199.

There is insufficient evidence in the record for the court to conclude that the County

satisfied any, much less all, of these requirements, such that summary judgment would be

warranted.  It is clear from the record that multiple County employees met with Plaintiff on a

number of occasions regarding her requests for accommodation.  See Bailey-Murray Depo.  at

288:22-290:7; Lozano Decl. ¶¶ 8, 12-13, 20, 38, 4; Clark Decl.  ¶¶ 5-6.  However, Plaintiff raises a

dispute of fact as to whether these meetings were held in "good faith" or involved efforts on the

part of the County to explore possible accommodations.  See UPS Supply Chain, 620 F.3d at

1110-11; Zivkovic, 302 F.3d at 1089.

Plaintiff also disputes that the County meaningfully considered her request for a transfer,

as required by the interactive process.  Plaintiff made multiple requests for accommodation in the

form of transfer to a work location away from Senter Road.  She also specifically applied to

transfer to five separate positions between July and December 2014, none of which were

successful.  Decl. of Sherae Moresco (Moresco  Decl.) ¶ 11, Dkt. No. 57; see Lozano Decl. ¶ 26.

19

In explanation, Defendant asserts that Plaintiff was not selected for those positions because

> She did not meet the minimum qualifications for two of the positions, Probation Community Worker and Community Worker. Also, she was not selected for a transfer to: (1) an Employment Counselor I position in the Department of Family and Children's Services because she did not have as much relevant experience as the candidate who was selected; (2) an Employment Counselor I in CalWORKS Employment Services because she did not have as much CalWIN and case management experience as the candidate who was selected; and (3) an Office Specialist III position in the Mental Health Department because she did not have experience with relevant software programs or billing and accounts payable. Lozano has not applied for any other transfer opportunities.

Mot. at 19 (citing Moresco Decl. ¶¶ 11).  Thus, not only did the County fail to find and transfer Plaintiff to an alternative position, but it rejected her application to positions she proactively sought out and applied to herself.

When the County did finally offer Plaintiff a position in a location other than Senter Road in September 2014, Plaintiff rejected the position because it required that she undergo a mandatory six-month training on Senter Road.  See Clark Decl. ¶¶5-6; Lozano Decl. ¶¶ 38, 41.  While the County offers this as evidence of its efforts to work with Plaintiff and provide a reasonable accommodation, Plaintiff cites it as evidence of the contrary.  She contends that requiring her to train at Senter Road is not reasonable, and therefore is insufficient to discharge the County's burden.  The court agrees.  Indeed, a jury could find that conditioning an accommodation on Plaintiff having to engage in the very aspect of the job that she seeks relief from is not a reasonable accommodation.

For these reasons, the court finds there is a triable issue of fact as to whether the County satisfied its obligation to provide Plaintiff with reasonable accommodation for her alleged disability or engage in a timely, good faith interactive process.  Accordingly, Defendant's Motion is DENIED with respect to Plaintiff's Third and Fifth causes of action.

## IV.  CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Dkt. No.55) is GRANTED IN PART and DENIED IN PART as follows:

Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    1.  Because disputes as to material facts exist with respect to whether Plaintiff had a

2 disability under the ADA, and whether Defendant satisfied its obligation to engaged in the

3 interactive process and accommodate Plaintiff's alleged disability, Defendant's Motion for

4 Summary Judgment is DENIED as to Plaintiff's First, Third, and Fifth causes of action.

5    2.  Because Plaintiff does not oppose Defendant's Motion as to her claims for

6 retaliation and harassment, Defendant's Motion for Summary Judgment is GRANTED as to

7 Plaintiff's Second and Fourth causes of action.

8    IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Amend the Complaint

9 (Dkt. No. 94) is GRANTED in accordance with the findings in this Order.

10 **V.  EVIDENTIARY OBJECTIONS**

11    Plaintiff submitted a long list of objections to the declarations submitted by Defendant in

12 support of its Motion for Summary Judgment.  <u>See</u> Opp. at 26-31.  These evidentiary objections

13 are misplaced.

14    Under Rule 56, "[a] party may object that the material cited to support or dispute a fact

15 cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

16 Consequently, the focus of an objection at the summary judgment stage is not "the admissibility of

17 the evidence's form" but on the "admissibility of its contents."  <u>Fraser v. Goodale</u>, 342 F.3d 1032,

18 1036 (9th Cir. 2003).  In consideration of the applicable standard, "objections to evidence on the

19 ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper

20 legal conclusion are all duplicative of the summary judgment standard itself" and are unnecessary.

21 <u>Burch v. Regents of the Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. June 5, 2006).  So

22 too are objections based on the best evidence rule, or which assert that a declarant's statement was

23 made without personal knowledge, "lacks foundation," or is given in the form of a legal

24 conclusion.  <u>Alvarez v. T-Mobile USA, Inc.</u>, No. CIV. 2:10-2373 WBS, 2011 WL 6702424, at *3-

25 4 (E.D. Cal. Dec. 21, 2011).  "Instead of challenging the admissibility of this evidence, lawyers

26 should challenge its sufficiency."  <u>Id.</u>  Plaintiff's objections made on any of these ground are

27

28 
Case No.: <u>5:14-cv-02992-EJD</u>
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

1    overruled.

2    Defendant's objections to the Declaration of Regina Mazzarini and excerpt of Dr.

3    Duenke's deposition testimony are overruled for the same reason.   Additionally, because the court

4    does not rely on this particular evidence objected to by Defendants, the objections are also

5    overruled as moot.

6    Defendant's objection to the list of County job vacancies, Exhibit 2 to the Collier

7    Declaration (Dkt. No. 74-2), is overruled pursuant to the Parties' Stipulation and Order Regarding

8    Discovery ("Discovery Stip.") ¶7, Dkt. No. 71 ("Defendant stipulates to the admissibility of the

9    spreadsheets it produced with Bates-numbers SCC 03830- SCC03831 (Eligibility Worker vacancy

10    list) and SCC06982-SCC07210 (County-wide employee vacancy list).").

11    Finally, Defendant objects to Paragraph 8 and Exhibit 4 to the  Declaration of Dr. Karlsson

12    (Dkt. No. 76-3), the Qualified Medical Exam ("QME") Report by Dr. Cynthia Mitchel, on the

13    grounds that Dr. Karlsson cannot authenticate the QME report prepared by Dr. Mitchell.

14    Dr. Karlsson concedes, "[b]ecause I have not undertaken to perform my own forensic analysis of

15    the causes of Ms. Lozano's conditions, I am not in a position to agree or disagree with Dr.

16    Mitchell's assessment at this time."  Karlsson Decl. ¶ 8.  Accordingly, Defendant's objection is

17    sustained because Dr. Karlsson's declaration does not authenticate the report and Dr. Karlsson

18    does not have personal knowledge of the information contained therein.

19    **IT IS SO ORDERED.**

20    Dated:  January 13, 2017

21    _____

22    EDWARD J. DAVILA
       United States District Judge

Case No.: 5:14-cv-02992-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

United States District Court
Northern District of California